In the Matter of the Estate of .Viola Cook, Deceased.

Surrogate's Court, Oneida County, April 8, 1937.

*Miller, Hubbell & Evans*, for the executor, etc., of Viola Cook, deceased.

*F. H. Cookinham*, for T. L. Kingsley, as administrator, etc., and Jenny Quintard Kingsley, a legatee.

*E. L. Hockridge*, special guardian.

MORRIS, S.   By her will, Viola Cook, long a school teacher of the city of Utica, N. Y., disposed of a substantial estate among personal friends and institutions in which she was interested. Over one hundred recipients of her generosity are mentioned in her will, which was carefully drawn, and the provisions of which were thoughtfully arranged.   In the first paragraph of the will the testatrix set up a life estate and the matter has been brought on for a construction of this particular provision, which reads as follows:

"*First*. I give and bequeath the sum of Five Thousand dollars ($5,000.00) unto my executor hereinafter named, in trust neverthe-

less, to invest and reinvest and to receive and collect the income thereof and to pay over the net income thereof, beginning with the date of my death, quarterly unto Flora Spencer (Mrs. J. C. Spencer), of Utica, N. Y., during her life, and upon her death to pay over the principal thereof as follows: one thousand dollars ($1,000.00) to The Industrial Institute at Camp Hill, Alabama; one thousand dollars ($1,000.00) to Universalist General Convention, to be used by it for the Japan Missions of the Universalist Church; and the remaining Three thousand dollars ($3,000.00) I direct shall become a part of my residuary estate; and I give and bequeath the same accordingly."

Following this provision and detailed in eleven other paragraphs of the will, general legacies are given to friends and institutions. By the thirteenth paragraph of the will the testatrix has provided that all the legacies contained in paragraphs numbered from first to twelfth, inclusive, of her will, should be paid in full in the following words:

" *Thirteenth.* In the event that from any cause my estate shall at my death be insufficient for the payment in full of all the legacies in this will contained, I direct that each and all legacies contained in the foregoing paragraphs numbered respectively First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh and Twelfth, shall be paid in full, and that all other legacies hereinafter in other paragraphs of this will contained shall proportionately abate so far as may be necessary to meet the conditions of my estate."

By paragraphs fourteenth, fifteenth, sixteenth, seventeenth and eighteenth the testatrix continues with further bequests, and in the twentieth paragraph bequeaths the residue remaining after the general legacies have been paid.

Unfortunately, the generous and charitable instincts of the testatrix exceeded her available estate. The general legacies in the first twelve paragraphs amount to $30,500, and upon the death of the life tenant mentioned in the first paragraph of the will, these legacies will amount to $32,500. The estate will have approximately $30,000 with which to pay these bequests. Thus, unless the balance earmarked for the residuary fund described in the first paragraph of the will is used, there will be an abatement in the amounts received by the general legatees. The matter is now before this court for an interpretation of the will and especially the clause creating the residuary fund after the death of the life tenant mentioned in said paragraph. Shall this money, amounting to $3,000, be used when available to make up the insufficiencies of the general legacies or shall it go wholly to the residuary fund? In answer to

this question we must consider the entire will and its various provisions as a whole and the first paragraph of the will must be read with due consideration to the thirteenth paragraph, for in that paragraph the testatrix shows a clearly expressed intention that the legacies included in the first twelve paragraphs should be paid in full. We must assume that the testatrix believed that there would be sufficient funds with which to pay all of her bequests, and it seems that she especially wished to assure herself that those general legacies mentioned in the first twelve paragraphs would be paid in any event. Another important fact is that she placed this expression of her desire to prefer certain legacies not at the end of the will, but midway between these twelve preferred paragraphs and the certain further bequests aggregating $2,500.

The question as to whether the residuary fund mentioned in the first paragraph can be used to make up the deficiencies in the general legacies mentioned in the first twelve paragraphs brings the matter squarely within the rule laid down in *Matter of Title Guaranty & Trust Co.* (195 N. Y. 339). The facts were quite similar to the case at hand. In that matter a testator had set up a trust fund with income payable to his wife for life and upon her death directed that the fund should be paid into and form a part of his residuary estate. There was a lack of funds with which to pay general legacies in full. The court there directed that the trust fund at the death of the wife should be applied to the payment of the amount remaining due on the general legacies. In that case the court said:

" It should be assumed that the testator in framing his testamentary scheme contemplated that his property was sufficient in amount to carry it out in all details. It seems perfectly clear that the testator never anticipated that the placing of these amounts in the residuary estate would, in case of insufficient assets, lead to the abatement of general legacies and the partial destruction of his main testamentary scheme.

" We are of opinion that, considering the whole will, it was the clear intention of the testator to treat the trust fund set apart for the benefit of his wife, in the event of her death, as a part of the rest, residue and remainder of his estate, after the payment of general legacies in full. There could be no rest, residue and remainder of his estate — no real residuary fund — until that was done."

The cases have uniformly followed this decision, and it seems to be the accepted law that general legacies should be paid in full before any payment to the residuary legatee, and that the residuary legatee cannot call on general or specific legatees to make an abatement so as to share proportionately with him. (*Matter of Avery*, 87 Misc. 75.)

Especially when considered in connection with the thirteenth paragraph of the Cook will, it seems clear, and I so construe, that the testatrix intended that the general legacies included in paragraphs one to twelve, inclusive, were to be paid in full before any residuary estate should be created.

Decreed accordingly.